IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND KASAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 5119 |
| | ) | |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| VILLAGE OF BEDFORD PARK and | ) | |
| LEO J. DuBOIS, individually and in | ) | |
| his official capacity as Chief of Police, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raymond Kasak ("Plaintiff") filed a first amended three-count complaint alleging that Defendants Village of Bedford Park ("Village") and Leo J. DuBois ("DuBois") (collectively "Defendants") violated Plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983. Defendants answered Count II and have moved to dismiss Count I (retaliation for actual and perceived collective bargaining activity) and Count III (retaliation for exercise of First Amendment speech) of the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Oral argument was held on August 28, 2007. For the reasons stated below, the motions to dismiss Count I and Count III are granted.

## I. BACKGROUND FACTS

On January 12, 2007, Judge Lindberg denied Defendants' previous motion to dismiss Count III of the original complaint. Thereafter, the Court acknowledged Defendants' intent to file a motion to dismiss with respect to Counts I and III, due to recent Seventh Circuit decisions following the Supreme Court's opinion in *Garcetti v. Ceballos,* 126 S. Ct. 1951 (2006). Plaintiff amended his complaint on June 8, 2007, and Defendants now move to dismiss Counts I and III.

The following is a summary of the facts alleged in the amended complaint. For the purposes of a Rule 12(b)(6) motion, the Court accepts as true all well-plead factual allegations, and construes them in the light most favorable to the Plaintiff. *Christensen v. County of Boone, IL,* 483 F.3d 454, 457 (7th Cir. 2007).

### A. Vehicle Incident

Plaintiff has been employed as a police officer by the Village for twenty-three years. (Comp. ¶ 7.)[1] DuBois is the Village's Chief of Police and served as Chief during all relevant times. (Comp. ¶ 4.) In 1987, Plaintiff was promoted from the rank of patrol officer to sergeant. (Comp. ¶ 8.) In 2001, Plaintiff was promoted from the rank of sergeant to lieutenant. (Comp. ¶ 9.) Plaintiff was also the supervisor of the Juvenile Division of the Village Police Department for eighteen years. (Comp. ¶ 10.)

In April 1999, on the recommendation of Captain Tom Moritz, Police Sergeant Wayne Elia ordered a patrol officer to write a police report falsely describing a parked 1958

---

[1]"Comp. ¶" refers to the paragraph numbering in Plaintiff's First Amended Complaint.

Plymouth as abandoned. (Comp. ¶¶ 135-38.) The vehicle was then towed, and as directed by Moritz, the towing service obtained and conveyed ownership of the vehicle to Elia. (Comp. ¶¶ 138-39.) DuBois received written notification of these activities around October 1999, and ordered Moritz to "take care of the matter" while DuBois was on vacation in Florida. (Comp. ¶¶ 142 – 43, 146.) DuBois did not order any additional internal investigation into the matter, and as a result, internal pressure against the police administration began to rise. (Comp. ¶¶ 144-46.) Moritz told the Department's supervisors that the incident was "a dead issue" and should not be looked into further, while Elia retained his position as Department Supervisor. (Comp. ¶¶ 147, 149.)

Plaintiff then contacted DuBois during his vacation to advise him on how Moritz was handling the situation. (Comp. ¶ 148.) Plaintiff took this action out of fear that the incident would have a negative effect on the police department and the Village. *Id.* During this conversation, Plaintiff recommended that DuBois immediately place Elia on administrative leave until after the investigation was complete. (Comp. ¶ 151.) Plaintiff felt compelled to voice his concerns about the negative effects on public trust and the Department's image that this incident could have, should the public become aware that the Department continued to allow a sergeant to work as a supervisor while under investigation. (Comp. ¶ 150.) Immediately following the conversation, DuBois followed Plaintiff's recommendation and ordered Moritz to place Elia on administrative leave. (Comp. ¶ 152.) As a result of Plaintiff's call, DuBois came under pressure to discipline both Elia and Moritz for their involvement in the incident. (Comp. ¶ 155.)

3

## B. Collective Bargaining Unit Involvement

The amended complaint also alleges that during his employment, Plaintiff was actively involved in the formation and recognition of the Village Police Collective Bargaining Unit ("Unit"), and served as its lead representative for six years. (Comp. ¶¶ 33, 34.) As lead representative, Plaintiff filed more than twelve grievances against the Police Administration on behalf of Unit members, most of which challenged actions taken by DuBois. (Comp. ¶ 35.) The number of grievances decreased significantly after Plaintiff relinquished this leadership position. (Comp. ¶ 36.)

Only patrol officers and sergeants can be members of the Unit. (Comp. ¶ 38.) Once Plaintiff became a lieutenant in 2001, he was no longer eligible to be a member of the Unit, and he was then considered to be part of DuBois' administration. (Comp. ¶ 38, 40.) As a lieutenant, Plaintiff's job duties, supervisory obligations, and work schedule were identical to his duties as sergeant, and he was ordered to support the Administration's positions, rather than the Unit's agenda. (Comp. ¶¶ 41, 43.)

After Plaintiff became a lieutenant, members of the Unit continued to seek Plaintiff's advice regarding Unit issues, while DuBois, his Administration, and the Village continually viewed Plaintiff as a leader and supporter of the Unit's interests. (Comp. ¶¶ 42-49, 54-55.) DuBois attributed to Plaintiff most of the questioning and opposition of the department's policies and procedures by the Unit members. (Comp. ¶¶ 46-49.) During contract negotiations with the Unit, DuBois and Deputy Chief Tom Moritz placed a "gag order" on Plaintiff, prohibiting him from speaking with members of the police department about any

4

issues being discussed during negotiations. (Comp. ¶ 45.) Plaintiff alleges, however, that DuBois misperceived Plaintiff's ongoing involvement with the Unit and its members, and his belief that he was engaging in union activity while a lieutenant was unsubstantiated. (Comp. ¶¶ 72-73.)

## C. Charges Brought Against Plaintiff

Based on the 1999 incident involving Elia and Moritz, the Unit called a Labor-Management meeting in October 2003 to address the administration's decisions surrounding this incident. (Comp. ¶¶ 50-52.) DuBois believed this meeting was orchestrated by Plaintiff. (Comp. ¶ 162.) Shortly after the meeting, Deputy Chief Wahl began to scrutinize the Office of the Juvenile Division which Plaintiff supervised and the maintenance of the Division's files. (Comp. ¶¶ 59-60.) DuBois removed Plaintiff from his position as Division supervisor on April 30, 2004. (Comp. ¶¶ 10, 66.)

On January 23, 2006, DuBois brought three charges against Plaintiff for failing to maintain records in the Juvenile Division from 2000 to 2004, improperly ordering the issuance of parking citations, and making efforts to cover up the failure to respond to a patrol officer's dispatch call. (Comp. ¶ 11.) Following a pre-disciplinary hearing, DuBois withdrew the last two charges, but sustained the first charge and decided to demote Plaintiff from lieutenant to patrol officer. (Comp. ¶¶ 26-29.) In March 2006, the Village Board of Trustees upheld DuBois' decision to demote Plaintiff. (Comp. ¶ 31.) DuBois and the Village took these actions in retaliation for Plaintiff's exercise of his First Amendment rights to free

5

association, political association and free speech. (Comp. ¶¶ 108, 165.) Defendants have moved to dismiss the claims involving free association (Count I) and free speech (Count III).

## II. STANDARD OF REVIEW FOR MOTION TO DISMISS

Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim upon which relief may be granted, the complaint must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); *EEOC* v. *Concentra Health Services, Inc.*, --- F.3d ---, 2007 WL 2215764 (7th Cir. 2007). Historically, this language has been interpreted under *Conley v. Gibson* to mean that "a complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The Supreme Court recently rejected *Conley's* interpretation in *Bell Atlantic Corp. v. Twombly*, an anti-trust case applying a new interpretation to the requirements for Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Since then, the Seventh Circuit has applied this interpretation to a Title VII retaliation action, viewing this interpretation as imposing two hurdles. *EEOC*, 2007 WL 2215764. First, the complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.'" *EEOC*, 2007 WL 2215764 (quoting *Bell*, 127 S. Ct. at 1964). Second, the complaint must plausibly suggest that the plaintiff has a right to relief "by providing allegations that 'raise a right to relief above the speculative level.'" *EEOC*, 2007 WL 2215764 (quoting *Bell*, 127 S. Ct. at 1965). If the allegations do not suggest such

a right to relief, "the plaintiff pleads itself out of court." *Id.* Accordingly, the Court will apply this new standard to the present motion to dismiss.

## III. COUNT I: RETALIATION FOR PROTECTED UNION RELATED SPEECH AND ACTIVITY

Count I is a First Amendment retaliation claim brought against Defendants under 42 U.S.C. § 1983. The Village urges the Court to dismiss Count I because as a lieutenant, Plaintiff's right to affiliate with the Unit is not protected by the First Amendment. Similarly, DuBois urges the Court to dismiss Count I because, as a lieutenant and a member of the police administration, Plaintiff could be demoted for actual or perceived support of the union.

In order to survive the motion to dismiss, the facts alleged must first show that the speech or expressive activity that provoked the alleged retaliation was protected by the First Amendment. *Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003). The content of the speech is the most important consideration. *Id.* If the speech or activity was constitutionally protected, the court will then consider whether the speech or activity was a substantial or motivating factor in the defendant's actions. *Id.* If the speech was such a factor, the court will give the defendant the opportunity to demonstrate that it would have taken the same action even in the absence of the plaintiff's exercise of his constitutional rights. *Id.*

To determine whether speech is protected under the First Amendment, the court must conduct a two-part analysis as set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983).[2] First, the court must determine whether

---

[2] *Garcetti* now requires an initial determination by the court as to whether the employee was speaking as a citizen or a public employee, before moving on to the determination as to whether

7

a public employee's expressive activity is on a matter of public concern. *Williams,* 342 F.3d at 782. If such activity is of public concern, the court must then conduct a balancing test, weighing the employee's interest in that expression with the State's interest in promoting the efficiency of its public services. *Id.* The Seventh Circuit has applied this test to both free speech and free association claims. *Gregorich v. Lund,* 54 F.3d 410, 414 and 414 n. 4 (7th Cir. 1995).

## A. Plaintiff's Involvement with the Collective Bargaining Unit Touches on a Matter of Public Concern.

When determining whether the associational rights that a plaintiff exercised were on a matter of public concern, the court must consider the content, form and context of the plaintiff's expression, with content being the most important of the three. *Gregorich,* 54 F.3d at 414. The Seventh Circuit has recognized that union activity can touch upon matters of public concern, particularly if the employee's purpose in being involved is of public concern rather than self-interest. *Gregorich,* 54 F.3d at 415; *Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir. 1994); *Cunningham v. Village of Mount Prospect,* 2002 WL 31628208 (N.D. Ill. 2002).[3]

Defendants do not dispute that Plaintiff's Unit activity involves a matter of public concern. Plaintiff was involved in the formation of the Unit and represented the members for six years. Plaintiff's participation in the Unit's formation and his representation of the Unit

---

the speech was of public concern. *Garcetti v. Ceballos,* 126 S. Ct. 1951 (2006); *Mills v. City of Evansville, Ind.* 452 F.3d 646 (7th Cir. 2006). However, this holding was particular to freedom of speech claims, and the Seventh Circuit has yet to apply such a requirement for freedom of association claims. Thus, the Court will not include the requirement from *Garcetti* in its analysis for Count I.

[3] Both parties appear to analogize the Unit to a labor union, and thus the Court will do the same.

Members' interests exceeded his self-interest and his activity touched upon matters of public concern. *See Gregorich,* 54 F.3d at 416 (finding that the plaintiff's attempts to obtain representation for his colleagues "went beyond his self-interest" and were a matter of public concern).

Moreover, although Plaintiff asserts that Defendants mistakenly believed that Plaintiff was still involved with the Unit after becoming a Lieutenant, the activity that Defendants mistakenly perceived Plaintiff to be involved in is also properly characterized as touching upon matters of public concern. Because as a lieutenant Plaintiff could no longer be a member of the Unit, his perceived activity would have purely been for the interests of others, i.e. the Unit members. Thus, if Defendants perceived him to be involved with the Unit for the purpose of assisting its members in their bargaining, this type of activity is of public concern.

## B. *Pickering* Balancing Test

Even though Plaintiff's Unit activity, whether actual or perceived, is of a matter of public concern, it may not necessarily be First Amendment protected activity if the Defendants' interest in promoting the efficiency of its public services outweighs the Plaintiff's interest. *Williams,* 243 F.3d at 782; *Pickering,* 391 U.S. at 568. Courts have clearly established that an individual has a right to engage in union activity, and this constitutes freedom of association protected in the First Amendment. *See Cunningham,* 2002 WL 31628208; *Quinn v. Village of Elk Grove Bd. of Fire and Police Com'rs,* 2002 WL 31875464 (N.D. Ill. 2002); and *Kesterton v. Davenport,* 647 F. Supp. 41, 43 (N.D. Ill. 1986). The First Amendment also protects the right to advocate on behalf of a union. *Cunningham,* 2002 WL 31628208.

9

The Seventh Circuit, however, has recognized that government employers may possess countervailing interests to such rights, such as to avoid potential disruption in light of any close working relationships essential to administering public responsibilities, and the "practical reality of governance that those with policy-making responsibilities 'must have faithful agents.'" *Gregorich,* 54 F.3d at 417; *Kokkinis,* 185 F.3d at 845. This principle attempts to ensure "that those who formulate and those who manage the affairs of government must have the loyalty of those to whom they must delegate that managerial authority." *Gregorich,* 54 F.3d at 417. Compared to ordinary government employers, courts have granted greater deference to police departments' decisions regarding discipline for an employee's speech, allowing the unique environment of a police force, "dependent on order, discipline and espirit de corps," to be considered in weighing any constitutional violations. *Kokkinis,* 185 F.3d at 845.

Moreover, the Court acknowledges that generally, in order to avoid any conflict between a supervisor's loyalties to the union and his employer, a public employee who acts as a supervisor, with responsibility to exert control over the employees whom he supervises, has no constitutional right to organize those same employees as a labor union. *Kesteron,* 647 F. Supp. at 43; *Elk Grove Firefighters Local No. 2340 v. Willis,* 400 F. Supp. 1097, 1100 (N.D. Ill. 1975).

In order to properly carry out the *Pickering* balancing test, the Court must distinguish between the two types of expressive activity for which Plaintiff alleges he was retaliated against. First, Plaintiff asserts that Defendants retaliated against him in part based upon

10

Defendants' misperception that he was currently involved with the Unit as a lieutenant. (Comp. ¶ 73.) Second, Plaintiff asserts that Defendants retaliated against him in part based upon his prior activity with the Unit, i.e. his activity with the Unit before he became a lieutenant. (Comp. ¶ 73.)

### 1. Plaintiff's Misperceived Activity with the Collective Bargaining Unit After Becoming a Lieutenant.

Employers, especially in the context of law enforcement, can prohibit supervisors from belonging to unions with rank and file officers, given the potential for conflicting loyalties between the administration and union members. *See Kesteron,* 647 F. Supp. at 43; *Elk Grove Firefighters Local No. 2340,* 400 F. Supp. at 1100. Plaintiff argues that in order for this rule to apply, an actual conflict of loyalties must exist, rather than just the potential for conflicting loyalties. In the case upon which Plaintiff relies, however, the court later held that a rule prohibiting a supervisor from belonging to unions because of the potential for conflict was valid and no actual conflict was required. *Mescall v. Rochford,* 1976 WL 1672 (N.D. Ill. 1976); *Mescall v. Rochford,* 1980 U.S. Dist. LEXIS 15433 (N.D. Ill. 1980).[4]

---

[4] Defendants' arguments regarding the potential conflict that may occur as a result of Plaintiff's potential activity are misplaced. Plaintiff appears to argue that he was not involved with the Unit, and that there could be no potential for conflict because there was no expressive activity that he was involved with while he was a lieutenant. Defendants appear to argue that public employers are entitled to demote an employee based on his potential conflicting activity. The cases upon which Defendants rely, however, deal with the potential for an employee's conflict based on that employee's actual activity. The cases cited by Defendants do not actually support the notion that an employer can demote an employee based on an employee's perceived activity with a union, but only that an employer can demote an employee based on a perceived conflict due to actual activity. *See Wilton v. Baltimore,* 772 F.2d 88 (4th Cir. 1985); *Elk Grove Firefighters v. Willis,* 405 F. Supp. 1097 (N.D. Ill. 1975); and *Kokkinis v. Ivkovich,* 185 F.3d 840 (7th Cir. 1999).

Nonetheless, Plaintiff acknowledges that as a lieutenant he was a supervisor. Plaintiff also does not challenge the department's policy prohibiting lieutenants from belonging to the Unit. Rather, Plaintiff simply asserts that Defendants mistakenly perceived that he was involved in the Unit as a lieutenant, and retaliated against him based on this misperception.

Defendants can prohibit Plaintiff from being involved in the Unit because Plaintiff, as a lieutenant with supervisory authority, does not have a protected interest in being a part of the Unit. Moreover, even if Defendants falsely believed that Plaintiff was involved with the Unit as a lieutenant, Plaintiff is not protected by the First Amendment. Under the *Pickering* test, the Department's interest in maintaining loyalty to the administration by prohibiting its lieutenants from being involved with the Unit allows the Defendants to discipline Plaintiff without violating his First Amendment rights. Thus, as to Plaintiff's claim that the Defendants retaliated against him due to their misperception that he was involved with the Unit as a lieutenant, the motion to dismiss Count I is granted.

### 2. Plaintiff's Prior Activity with the Collective Bargaining Unit before Becoming a Lieutenant.

Although Plaintiff was allegedly retaliated against after becoming a lieutenant, he alleges that this retaliation was in part based upon his prior activity with the Unit as a sergeant or patrol officer. Before Plaintiff became a lieutenant, Plaintiff's interest in being involved with the Unit outweighed any interest the Department had in limiting those rights. The Police Department's policy allowed sergeants to be members of the Unit. Plaintiff's right to affiliate with the Unit before becoming a lieutenant, therefore, was protected by the First Amendment.

12

Courts have been less clear, however, as to whether a public employer can demote or fail to promote an employee based on his past protected activity with a union. For example, the Fourth Circuit, as cited by Defendants, has found that a public employer's interest in administering efficient public services by keeping employees who were previously actively involved with the union out of supervisory positions outweighed the employee's interest in being active in that union as a non-supervisor. *Wilton v. Mayor and City Council of Baltimore,* 772 F.2d 88, 90 (4th Cir. 1985). The court found that the defendants' decision to not promote the plaintiffs due to the defendants' concern that the plaintiffs' past union activity would compromise their supervisory responsibilities over their former or fellow union members was appropriate in the context of jail administration. *Id.* at 89. In finding that the defendants were justified in not promoting the plaintiffs because of their prior union activity, the court emphasized the unique problems that jail employees face, and the importance of efficiently administrating local jails. *Id.* at 91-92.

On the other hand, this District, in at least two unreported cases, has found that a public employer cannot fail to promote an employee because of his prior union activity. *See Quinn,* 2002 WL 31875464; and *Cunningham,* 2002 WL 31628208. In these cases, both in the context of fire fighting, the Court found that the plaintiffs' rights to engage in union activity as non-supervisors outweighed the government's interest in keeping such employees out of supervisory positions. *Quinn,* 2002 WL 31875464; *Cunningham,* 2002 WL 31628208. In neither case, however, did the defendants allege any facts that would justify their actions, and thus the Court's analysis of the conflicting interests was minimal. *Quinn,* 2002 WL

13

31875464; *Cunningham,* 2002 WL 31628208.

In this case, Plaintiff appears to argue that he was both promoted to lieutenant in 2001 and demoted by the same chief in 2006 in retaliation for his prior activity with the Unit. Plaintiff cannot have it both ways. His argument that the same chief, DuBois, in retaliation for Plaintiff's prior union activity, both promoted him in 2001 to keep him out of the Unit and then five years later demoted him to return him to the Unit, defies logic and fails to state a claim. Furthermore, this assertion, if anything, addresses the third step in the analysis of whether Plaintiff's prior involvement with the Unit was a substantial or motivating factor in Defendants' decision to demote him, rather than supporting the element that he must first overcome in order to reach that third step.[5] Thus, as to Plaintiff's claim that the Department retaliated against him in part due to his prior involvement with the Unit, the motion to dismiss is also granted.

---

[5]As stated above, the Court cannot address this step in the analysis until Plaintiff overcomes the *Connick/Pickering* Test. Even if Plaintiff were to overcome this test, however, the Court doubts that Plaintiff has pleaded a sufficient causal connection between his alleged protected activity and Defendants' actions, given that Defendants' decision to demote Plaintiff did not occur until five years after his protected expressive activity. *See Mullin v. Gettinger,* 450 F.3d 280, 285 (7th Cir. 2006) (finding that a time gap of one year between a plaintiff's letter and the defendants' actions was too attenuated to provide evidence that the letter motivated the defendants' actions) and *Oest v. Illinois Department of Corrections,* 240 F.3d 605, 616, 616 n. 8 (7th Cir. 2001) (noting that "the inference of causation weakens as the time between the protected expression and the adverse action increases," and that a one-year lapse between the employee's protected expression and the employer's actions is, by itself, too attenuated to raise an inference of discrimination).

14

## IV. COUNT III: RETALIATION FOR EXERCISE OF FREEDOM OF SPEECH

Count III of the amended complaint is also a First Amendment retaliation claim brought under 42 U.S.C. § 1983. Both Defendants urge the Court to dismiss Count III because Plaintiff was not speaking as a citizen when he reported to Defendant DuBois, but rather Plaintiff's speech arose out of his official duties.

The motion to dismiss the retaliation claim based upon Plaintiff's freedom of speech requires the same analysis as the freedom of association claim, with one additional requirement. Before determining whether a plaintiff's speech was a matter of public concern, claims involving a plaintiff's freedom of speech require the Court to first determine whether the employee was speaking as a citizen or as a public employee. *Garcetti v. Ceballos,* 126 S. Ct. 1951 (2006); *Mills v. Evansville,* 452 F.3d 646, 647-48 (7th Cir. 2006). If the employee's speech was made pursuant to his official duties, such speech is as an employee, not a citizen, and is therefore not protected by the First Amendment. *Spiegla v. Hull,* 481 F.3d 961, 965 (7th Cir. 2007).

On January 12, 2007, Judge Lindberg denied Defendants' motion to dismiss Count III of the original complaint, finding that it was unclear as to whether Plaintiff acted pursuant to his job responsibilities or whether he was acting as a private citizen. Specifically, the Court found that it was unclear as to whether Plaintiff's job responsibilities, as set forth in Section 30.1 of the Police Department's rules and regulations, required him to take the precise action he took. In support of their motion, Defendants relied on Section 30.1, which states: "Any Member becoming aware of or receiving a complaint regarding any infraction of departmental

15

regulations or violation of village ordinance or state law by department personnel shall report such conduct as prescribed by current applicable procedure." The Court found, however, that "it was unclear whether Moritz's failure to act constituted an 'infraction of departmental regulations or violation of village ordinance or state law,' or whether Plaintiff reported Moritz's conduct 'as prescribed by current applicable procedure.'" *Kasak v. Village of Bedford Park, et al.*, No. 06 C 5119, slip op. (N.D. Ill. Jan. 12, 2007).

Since this order was entered, the Seventh Circuit has ruled on several cases involving retaliation claims based on freedom of speech, further clarifying the proper analysis under *Garcetti. Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506 (7th Cir. 2007); and *Morales v. Jones*, 494 F.3d 590 (7th Cir. 2007). Under *Garcetti*, an employee's speech does not have to be part of his core job function in order to be considered within his employment capacity, but rather need only be made pursuant to his official responsibilities. *Spiegla*, 481 F.3d at 966; *See Sigsworth*, 487 F.3d at 509-11.

The inquiry into whether one's speech was made pursuant to his job duties "'is a practical one,' and should focus on 'the duties an employee is actually expected to perform.'" *Morales*, 494 F.3d at 596. For example, in *Spiegla*, the court found that the plaintiff reported a possible security breach as part of her official responsibility as a correctional officer to keep the prison secure, even though plaintiff's main job function was to implement security policies rather than to question them. *Spiegla*, 481 F.3d at 966. The court compared this action to the plaintiff in *Garcetti*, whose job responsibilities included supervising warrant applications, and who thus "acted as a government employee" when he reported on possible misrepresentations

16

in a particular warrant affidavit. *Id.* at 967. Similarly, in *Sigsworth,* the plaintiff reported on misconduct connected to a task force operation that he had helped to conceive and supervise, and thus the court found that his speech was made pursuant to his official job responsibilities. *Sigsworth,* 487 F.3d at 511. And in *Morales,* the court found that statements made by two police officers regarding their suspicions of misconduct by their superiors in a matter in which they were the arresting officers were made pursuant to their official job responsibilities. *Morales,* 494 F.3d at 597-98.

Defendants also cite a recent Sixth Circuit case that also found an employee's speech to be pursuant to her official job responsibilities. In that case, the court emphasized the Supreme Court's finding in *Garcetti* that "'[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Weisbarth v. Geauga Park District et al.,* ---- F.3d ----, 2007 WL 2403659 (6th cir. 2007) *(*quoting *Garcetti,* 126 S. Ct. at 1960). The court also emphasized *Garcetti's* language that "'[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.'" *Weisbarth,* 2007 WL 2403659 (quoting *Garcetti,* 126 S. Ct. at 1962). Moreover, the court found that the plaintiff's pleadings included sufficient information about the plaintiff's employment duties to determine whether

17

her actions fell within those duties. *Id.* Thus, the court found that the plaintiff's speech to an independent consultant hired by her employer regarding office morale and performance not only fell within the plaintiff's official responsibilities, but also owed its existence to her professional duties. *Id.*

In addition to the above cases, Defendants argue that Sections 30.1, 30.3 and 30.4 of the Department's rules and regulations and Village Ordinance 9-1-7 demonstrate that Plaintiff was required to report Moritz's failure to act and to recommend Elia's removal as part of his job responsibilities. Sections 30.3 through 30.4 of the rules and regulations state as follows:

> 30.3 A supervisor receiving information or having personal knowledge of alleged misconduct by a member of the department shall conduct an informal inquiry, if practical. If there appears to be some justification for the allegation the supervisor shall complete a report outlining the allegations, identifying principles and witnesses, and providing information developed by the informal inquiry....

> 30.4 Based on an informal inquiry, a supervisor may initiate a request for disciplinary action if the discipline does not result in the officer's removal, discharge or suspension in excess of three (3) days. If discipline for the alleged misconduct would result in removal, discharge or suspension in excess of three (3) days, the supervisor may initiate a formal investigation.

Ordinance 9-1-7 lays out the responsibilities of a police sergeant, the position which Plaintiff held during the time of his reported speech, stating:

> A sergeant shall be held responsible for exacting the proper performance of police duties from the members of the department assigned to his command; for the enforcement of all laws, rules, regulations and orders of the department; and for the proper conduct and appearance of the members of the department assigned to his command. The sergeant shall perform his duties and responsibilities in conformance with the provisions provided for in said administration, regulations and standard operating procedure.

18

The above department rules and regulations demonstrate that Plaintiff's actions were within his official, written responsibilities to report misconduct and to initiate a request for disciplinary action. But as stated above, an employee's speech does not have to be part of his core job function or in his formal written job description in order to be part of his job responsibilities.

Even if Plaintiff was not required to speak to DuBois regarding his concerns, his speech still "owed its existence" to his role as police sergeant. Plaintiff spoke to DuBois as an officer and member of his administration, concerned about the public's perception of the Department. Although Plaintiff did not directly supervise the matter he spoke about, he certainly spoke to DuBois as a police sergeant and member of the Chief's administration when he expressed his concerns. Plaintiff learned about the investigation in his role as a police sergeant, rather than as a citizen, and his communication to DuBois was an internal departmental communication. Plaintiff's speech truly "owes its existence" to his position as a police sergeant.

Moreover, Plaintiff has pled himself out of court. In his complaint, Plaintiff states that he "advised Chief DuBois how Captain Moritz was handling the situation," and "recommended" that DuBois place Elia on administrative leave, not that he complained or reported a grievance. (Comp. ¶¶ 148, 151.) Surely his position as police sergeant gave him the authority to give such advice and make such a recommendation.

19

Plaintiff did not contact DuBois because he thought the public should know what was happening. To the contrary, Plaintiff spoke to DuBois because he did not want the public to find out about the whitewash investigation. Plaintiff spoke to DuBois out of a duty of loyalty to the police administration, not out of a duty to communicate to the public. Although Plaintiff may have thought that the public would be concerned about this matter, Plaintiff did not report this to the newspaper, make a public statement, or even threaten to go to the public. *See Garcetti,* 126 S. Ct. at 1961 (giving examples of protected speech by public employees, such as making a public statement, discussing politics with a co-worker, or writing a letter to newspapers or legislators). Instead, he spoke to DuBois because he feared "the negative effect that this scandal would have on the Bedford Park Police Department and the Village of Bedford Park as a whole," and was concerned about "the Department image should the public become aware of" the mishandling of the investigation. (Comp. ¶¶ 148, 150.) Plaintiff spoke pursuant to his official responsibilities as police sergeant, not as a citizen, and as a result, the Court grants Defendants' motion to dismiss Count III.

## V. CONCLUSION

Police officers do not lose their freedom of speech and association rights upon becoming government employees, and can have viable causes of action when their employer has violated such rights. Plaintiff, however, is not one of these officers. He has committed fundamental flaws in his case by failing to state a logical claim as to his free association rights, and by pleading himself out of court as to his freedom of speech claim. Thus, for the

20

reasons set forth in this opinion, **Defendants' motions to dismiss Count I and Count III of Plaintiff's first amended complaint are granted.**

**SO ORDERED THIS 18th DAY OF SEPTEMBER 2007.**

_Morton Denlow_

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Kenneth C. Yuen
Yuen Law Offices LLC
1425 W. Schaumburg Road #302
Schaumburg, IL 60194

Counsel for Plaintiff


Mark C. Egan
Counsel for Plaintiff
Mark C. Egan, Esq.
3849 W. 109th Street
Chicago, IL 60655

Counsel for Plaintiff

Clifford Gary Kosoff
Jane M. May
Joshua S. Abern
O'Halloran, Kosoff, Helander &
Geitner, P.C.
650 Dundee Road, Suite 475
Northbrook, IL 60062

Counsel for Defendant Village of
Bedford Park


Robert Radasevich
Michael F. Hughes
Neal, Gerber & Eisenberg
Two North LaSalle Street
Suite 2200
Chicago, IL 60602

Counsel for Defendant DuBois